## MEINHARD BROTHERS & COMPANY *et al. v.* PEOPLES NATIONAL BANK *et al.*

*Simmons, C. J.*—1. In order to entitle unsecured creditors to file a petition under section 3149(a) *et seq.* of the code, known as the "insolvent traders act," as amended by the act of December 13th, 1894 (Acts of 1894, p. 89), the provisions of the law must be strictly complied with; and consequently such a petition should show that the insolvent debtor against whom it is filed is still a trader, and should affirmatively allege that the plaintiffs represent at least one third in amount of the unsecured debts due by him, and also that payment of their debts after maturity has been duly demanded and refused. A petition lacking in these essential elements should be dismissed on general demurrer.

2. In the present case there was no error in sustaining the demurrer filed by a codefendant of the alleged insolvent debtors.
November 16, 1896. Argued at the last term.     *Judgment affirmed.*

Equitable petition.   Before Judge Fish.   Sumter superior court.   May term, 1895.

Meinhard Brothers & Co., Marsh & Smith and others filed their petition against Cobb & Daniel and the Peoples

National Bank, alleging: Cobb & Daniel were merchants until the night of March 23, 1895, when they were closed up by the deputy-sheriff of Sumter county by virtue of a mortgage *fi. fa.* in favor of said bank. They owe Meinhard Brothers & Co. on open account $216.50 for merchandise purchased on January 18, 1895, to run the mercantile business; the goods went into the stock of Cobb & Daniel since that date, and as petitioners are advised and believe some of these goods are on hand in said stock unsold. Meinhard Brothers & Co. have no security for the debt. Itemized statement of the account is attached. Cobb & Daniel owe petitioners Bailey & Co. $65.62 for merchandise purchased February 7, 1895, to carry on said mercantile business; and similar allegations are made as to this debt as were made as to the debt to Meinhard Brothers & Co. Cobb & Daniel are indebted by note dated August 9, 1894, and due November 15, 1894, to Marsh & Smith $188.75, with interest and attorney's fees, for goods to carry on said mercantile business, and Marsh & Smith have no security for their debt. Copy of the note is attached. Cobb & Daniel are insolvent. Said bank has foreclosed its mortgage for $4,263.25 with interest, and $249.72 attorney's fees, and has had the mortgage *fi. fa.* levied upon the entire stock of goods of Cobb & Daniel, which it is seeking to sell and have the proceeds applied to the *fi. fa.* While the mortgage is dated March 16, 1895, and was recorded March 18, 1895, petitioners are informed and believe it is a renewal of a mortgage from time to time since the summer or early fall of 1894, and never have any of the mortgages of which it is a renewal been recorded, but that in each instance all of said mortgages have been kept off record by an agreement between the mortgagee and Cobb & Daniel, lest its record should injure their credit and prevent them from being able to buy goods from petitioners. Had said mortgages been recorded as required by law, petitioners would not have sold the goods to Cobb & Daniel. Said goods, espe-

cially those of Meinhard Brothers & Co. and Bailey & Co., were sold to Cobb & Daniel and went into their stock while said mortgages were held off of record under such agreement. Said acts of the mortgagee put it in the power of Cobb & Daniel to buy said goods, when they otherwise could not have done so, and was a legal fraud upon the rights of petitioners, and caused them to suppose that they were selling to responsible, unincumbered parties, when in truth the mortgagee was then holding an incumbrance sufficient to destroy their business and break them up at any time it saw fit. Copy of the mortgage is attached. Petitioners are informed and believe, that when the first mortgage was given the mortgagee agreed with the mortgagors, as part of the agreement through which the mortgage was obtained, that not only should the mortgage be kept off of record, but that the mortgagee would allow the mortgagors to continue their business and the bank would furnish the financial aid therefor, and the agent of the mortgagee, who made this agreement for the mortgagee, being its cashier and the owner of the principal part of its stock, had it in his power to carry out this agreement; and that the bank would run the mortgagors through the summer of 1895; and that this agreement was made and continued when the mortgage was renewed from time to time; and on the strength of this promise made by the cashier, who procured the first mortgage and the renewal, that said mortgage should not be recorded nor foreclosed, Cobb & Daniel purchased on credit a large stock for the spring trade of 1895, relying upon the repeated promises as above mentioned made by said cashier. In pursuance of these agreements Cobb & Daniel made such statements of their financial standing as to induce petitioners and others to sell them a large stock of goods, petitioners having no notice or knowledge of the mortgage. The purchase of the goods under such circumstances was a legal fraud upon petitioners, and did not convey a title to Cobb & Daniel, and as the mortgagee was a party to the

transaction it got no legal lien as against petitioners, not being on the footing of an innocent purchaser without notice. The mortgage is void as to their claim, especially as to all goods bought since the giving of the mortgage of which the mortgage foreclosed is a renewal. After the goods had been so purchased and were nearly all in, the bank foreclosed its mortgage and had it levied upon the entire stock. Petitioners are informed and believe, that said cashier told Cobb & Daniel, just before the mortgage was foreclosed, that now Cobb & Daniel had completed their stock it was the time to foreclose; that there were some goods which had just come into the stock at the time of foreclosure and had not even been opened, which Cobb & Daniel wanted to return, but the cashier objected and would not allow them to return said goods; and that there is usury in the mortgage. These notes being for money loaned by a national bank, the usury and all interest is forfeited. The bank's charge for attorney's fees is without authority of law, as there has not been such a contract between the mortgagors and mortgagee as to come within the law for charging attorney's fees, and Cobb & Daniel being insolvent, petitioners have the right to have the mortgage reduced by the amount of the attorney's fees. They pray, for receiver; that the bank and the sheriff be restrained from proceeding to enforce the collection of the mortgage; that the lien of the bank as against said stock be declared void, and be decreed void as against petitioners; that the proceeds of the stock when sold be held in the custody of the court until the rights of petitioners and such others as may be made parties be determined; for judgment against Cobb & Daniel, general relief, and process.

The defendant bank demurred, among other grounds, for want of equity in the petition; because it is not alleged that petitioners represent one third of the unsecured indebtedness against Cobb & Daniel, nor that said indebtedness is due and unpaid and demand for payment thereof has

42

been made on Cobb & Daniel and payment refused; and because petitioners are not entitled to the relief prayed for.

Petitioners amended by alleging: They are advised and believe that Cobb & Daniel have a large amount of notes, book accounts, and evidences of indebtedness, of the nominal value of $5,000, from which, if properly looked after, a considerable sum may be realized to go towards the liquidation of their debts. These evidences of indebtedness grow out of the mercantile business of Cobb & Daniel, and are the proceeds of the sale of the goods for which they owe petitioners and others who may be made parties plaintiff. The assets of Cobb & Daniel, if properly managed, are more than enough to pay off the mortgage, even if it should be declared valid. Petitioners are advised and believe that Cobb & Daniel made a conveyance or assignment of all said evidences of indebtedness to the bank, as part of the same sale or transaction in which the mortgages were given. They pray, that the receiver to be appointed be directed to take charge of all such evidences of indebtedness, and collect the same and return the money into court to be paid out by order of the court, and that said conveyance of the evidences of indebtedness be cancelled as a legal fraud upon the right of petitioners. Further, at the time of the giving of the mortgage which has been foreclosed, it was expressly agreed between Cobb & Daniel and the bank that the mortgage was not to be recorded; and it was agreed, as part of the consideration of said mortgage, that the bank was not to foreclose it, but was to carry the debt until the fall of 1895 and would lend Cobb & Daniel financial aid for them to carry on their business during 1895; and if the bank had carried out its agreement Cobb & Daniel would have been able to pay all of their debts, including the debt to the bank. None of the unsecured creditors of Cobb & Daniel were pushing them, and all of them would have gladly extended time on their debts. The mortgage of which the mortgage foreclosed is a renewal was given with the agree-

ment that it was not to be recorded, and the mortgage foreclosed was given at the instance of the bank upon the statement that there was an error in the mortgage. Cobb & Daniel, having great confidence in the officers of the bank, gave the mortgage foreclosed in lieu of the mortgage recorded.

By further amendment various parties plaintiff were made, and it was alleged: All the evidences of indebtedness to Cobb & Daniel, also a bond for title of Cobb, one of the firm, to certain land in Muscogee county, was transferred to the bank as collateral security for the note which the mortgage was given to secure. Said note is largely infected with usury, and said transfers were made as part of the usurious transaction; wherefore the title of the bank to the same is void. Petitioners pray, that said transfers be decreed void, and the bank be required to surrender the things transferred to defendants or to a receiver, should one be appointed; and for judgment in their favor against Cobb & Daniel.

The cause coming on for hearing on April 13, 1895, the court, by consent of all parties, passed an order granting the injunction prayed for, ordering the sale of the goods and impounding the proceeds, appointing the cashier of the bank receiver, ordering the collection of the notes and accounts, and that the receiver report to the court the proceeds of all money arising from the sale of the goods or the collection of the choses in action, to be a fund in court to be paid out under the order of the court; and further ordering that in the event the bank sustained its mortgage on the final hearing, the fund that should be awarded to it should not be charged with attorney's or receiver's fees, that the fund should be deposited in said bank on interest, etc. This order contained also the following provision: "The defendant, the Peoples National Bank, does not waive its right of demurrer by this consent." Thereafter the bank insisted upon its demurrer, and moved to dismiss the peti-

tion and amendments. Plaintiffs contended that the demurrer should not be sustained or considered, because the same had already been adjudicated on April 13, 1895, when the consent order before mentioned was passed. After argument the court passed an order sustaining the demurrer and motion to dismiss, and revoking the restraining order. Plaintiffs excepted, alleging that the court erred, because the demurrer had been fully adjudicated, and the money arising from the sale of the goods was then in the hands of the court, and the court having taken charge of the same, having appointed a permanent receiver and granted a permanent injunction, and ordering the goods sold and the fund arising from the sale thereof impounded, to be paid out according to order of court in the case, it was then too late to urge the demurrer on the grounds therein stated; because the grounds of demurrer are without merit; and because there was equity in the petition, and the court should have overruled each and all the grounds of the demurrer.

*Dodson & Son, Ansley & Ansley* and *R. L. Maynard*, for plaintiffs. *Lumpkin & Nisbet*, for defendants.